SCANNED
APR 30 2004
U.S. DISTRICT COURT ST. PAUL

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 02-3562

| | | |
|---|---|---|
| Ronald Richard Johnson; Dee Lundberg Johnson, | * | |
| Plaintiffs/Appellants, | * | |
| v. | * | CV00-1281 DWF/SRN |
| City of Shorewood, Minnesota; City of Minnetonka, Minnesota, and its Mayor in her official capacity; Riley-Purgatory-Bluff Creek Watershed District, and the Chair of its Board of Managers in his official capacity; Trivesco, a partnership, and its partners; Robert H. Mason, Inc., a corporation; Highland Properties, Inc., a corporation; Steiner & Koppelman, Inc., a corporation; Highland Villa Builders, Inc., a corporation; United States of America; Corps of Engineers, being sued as the Corps of Engineers of the United States; Louis Caldera, The Honorable, Secretary of the United States Army in his/her official capacity or his successor; Joseph N. Ballard, Lt. General, the Commander-in-Chief of the Corps of Engineers of the United States in his/her official capacity, | * | Appeals from the United States District Court for the District of Minnesota. |
| Defendants/Appellees. | * | |

No. 02-4081

| | |
|---|---|
| Ronald Richard Johnson; | * |
| Dee Lundberg Johnson, | * |
| | * |
| Plaintiffs/Appellees, | * |
| | * |
| v. | * |
| | * |
| City of Shorewood, Minnesota; | * |
| | * |
| Defendant/Appellant, | * |
| | * |
| City of Minnetonka, Minnesota, and its | * |
| Mayor in her official capacity; Riley- | * |
| Purgatory-Bluff Creek Watershed | * |
| District, and the Chair of its Board of | * |
| Managers in his official capacity; | * |
| Trivesco, a partnership, and its partners; | * |
| Robert H. Mason, Inc., a corporation; | * |
| Steiner & Koppelman, Inc., a | * |
| corporation; United States of | * |
| America; Corps of Engineers, being | * |
| sued as the Corps of Engineers of the | * |
| United States; Louis Caldera, The | * |
| Honorable, Secretary of the United | * |
| States Army in his/her official capacity | * |
| or his successor; Joseph N. Ballard, Lt. | * |
| General, the Commander-in-Chief of | * |
| the Corps of Engineers of the United | * |
| States in his/her official capacity; | * |
| Highland Properties, Inc., a corporation; | * |
| Highland Villa Builders, Inc., a | * |
| corporation, | * |
| | * |
| Defendants/Appellees. | * |

No. 03-2023

| | |
|---|---|
| Ronald Richard Johnson; | * |
| Dee Lundberg Johnson, | * |
| | * |
| Plaintiffs/Appellants, | * |
| | * |
| v. | * |
| | * |
| City of Shorewood, Minnesota; and its Mayor in his official capacity; City of Minnetonka, Minnesota, and its Mayor in her official capacity; Riley-Purgatory-Bluff Creek Watershed District, and the Chair of its Board of Managers in his official capacity; Trivesco, a partnership, and its partners; Robert H. Mason, Inc., a corporation; Highland Properties, Inc., a corporation; Steiner & Koppelman, Inc., a corporation; Highland Villa Builders, Inc., a corporation; United States of America; Corps of Engineers, being sued as the Corps of Engineers of the United States; The Honorable Louis Caldera, Secretary of the United States Army in his/her official capacity or his successor; Lt. General Joseph N. Ballard, the Commander-in-Chief of the Corps of Engineers of the United States in his/her official capacity, | * |
| | * |
| Defendants/Appellees. | * |

---

Submitted: December 18, 2003

Filed: March 5, 2004

---

Before LOKEN, Chief Judge, WOLLMAN, and HANSEN, Circuit Judges.

---

WOLLMAN, Circuit Judge.

This appeal represents the continuation of Ronald and Dee Johnson's multi-year litigation over a 20-acre parcel of land they own in Hennepin County, Minnesota. After pursuing several state court actions during the 1990s, the Johnsons brought this suit in federal court against the cities of Shorewood and Minnetonka, Minnesota, the Riley-Purgatory-Bluff Creek Watershed District (Watershed District), various private real estate developers,[1] and the United States of America (acting through the Army Corps of Engineers and certain Army officials). The Johnsons assert a multitude of federal and state claims, but their primary allegation is that the appellees have, individually and in concert, effected various regulatory and physical takings of their property and conspired to prevent them from receiving just compensation. Adopting a series of reports and recommendations by a magistrate judge,[2] the district court[3] dismissed the claims against the United States for want of subject matter jurisdiction and on statute of limitations grounds, granted summary judgment to the remaining defendants, and declined to exercise supplemental

---

[1]Trivesco (a partnership); Robert H. Mason Homes, Inc.; Highland Properties, Inc.; and Steiner & Koppelman, Inc.

[2]The Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

[3]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

jurisdiction over the pendent state law claims.[4] The Johnsons appeal each of these decisions, as well as certain discovery rulings and the decision denying them leave to submit a third amended complaint. Shorewood cross-appeals, arguing that the district court should have found certain claims barred by res judicata. We affirm in all respects, albeit on slightly different grounds with respect to some of the claims.

## I.

The subject property, which the Johnsons purchased in 1981, is located within the city of Shorewood. It consists of three wooded knolls separated by a flat, centrally located field. The field is diagonally bisected by a drainage ditch running from the northeast corner to the southwest corner. Before 1984, water ran through the ditch and headed south from the Johnson property, ultimately emptying into Purgatory Creek. In 1980, prior to the Johnsons' purchase, the field was designated as a wetland on the National Wetland Inventory Map issued by the United States Fish and Wildlife Service.[5]

After the Johnsons purchased the property, Trivesco began developing land to the south and west. Dubbed "Waterford," the resulting subdivision required the installation of roads and utilities. In 1984, Shorewood obtained the consent of the United States Army Corps of Engineers to install the roads and utilities under an existing Clean Water Act Permit that authorized the filling of "headwaters wetlands." The Watershed District issued permits for the work.

Shorewood constructed a road berm, culvert, and pond-control structure along the southern boundary of the Johnson property. The pond-control structure raised the bottom of the drainage ditch above its original elevation and created a pond near the

---

[4]After summary judgment had been entered, the district court allowed Johnson to submit two affidavits that had not been made part of the summary judgment record. After reviewing the affidavits, the district court concluded that it was not necessary to vacate the prior orders.

[5]The Johnsons contest the validity of this designation.

southern boundary of the Johnson property. Based on the design of the pond-control structure, the Watershed District designated a 100-year storm event flood plain at an elevation of 917.1 feet above sea level and prohibited construction at elevations lower than 919.1 feet. Johnson v. City of Shorewood, No. 91-18099, at 4 (Minn. Dist. Ct., Aug. 17, 1993, Findings of Fact, Conclusions of Law, and Order For Judgment).

The Johnsons commenced state court litigation against Shorewood in 1991, alleging inverse condemnation under both the federal and Minnesota constitutions. The state court determined that the flood plain restrictions did not constitute a regulatory taking, but concluded that the pond and associated control structure had physically taken the Johnsons' property up to 914 feet above sea level because the pond would rise to that elevation during "major storm events." Id. at 5. Accordingly, the state court issued a writ of mandamus compelling Shorewood to commence condemnation proceedings for the purpose of acquiring a drainage easement on the Johnsons' property up to 914 feet above sea level. Id. The Minnesota Court of Appeals affirmed this judgment. Johnson v. City of Shorewood, No. CX-93-2452 (Minn. Ct. App. May 11, 1994), review denied, (Minn. July 15, 1994).

Shorewood instituted condemnation proceedings and awarded the Johnsons $2,000 for the easement and $3,000 for "cost to cure" damages. Not satisfied with the award, the Johnsons brought a second state court action, this one challenging the scope of the taking and the amount of the award. The state court held that the Johnsons were collaterally estopped from re-litigating the scope of the taking[6] and

---

[6]In the first action, the Johnsons challenged certain conditions that Shorewood had placed on the plat approval of Johnson property, and although the record does not precisely disclose what was argued at the first trial, the second state court found as follows: "[B]ecause the issue concerning the pre-ownership wetland designation relating to the Property, and the issue concerning the City's conditions for plat approval, were already adjudicated [in the first state proceeding]. . . upon a motion for summary judgment, the doctrine of collateral estoppel clearly precludes the introduction of evidence or argument [to the] . . . contrary. City of Shorewood v. Johnson, No. CD-2344, at 5 (Minn. Dist. Ct., Oct. 10, 1996, Memorandum and

submitted the valuation issue to a jury. The jury awarded the Johnsons $2,000 for the taking and $63,000 for clean-up costs. The state court vacated the $2,000 takings award, however, in light of the jury's finding that the taking had not diminished the market value of the Johnsons' land. Although both parties appealed, the Johnsons did not contest the amount of the award. The Minnesota Court of Appeals affirmed the judgment, holding that the $63,000 award was appropriate because the value of the Johnsons' property would have been diminished absent clean-up of debris caused by the flooding. City of Shorewood v. Johnson, No. C5-97-1525, 1998 WL 188561, at *1 (Minn. Ct. App. April 21, 1998).

In 1996, the Johnsons brought suit against the city of Minnetonka, alleging that development of the Aschcroft subdivision in Minnetonka had been diverting storm water on to the Johnsons's property since as early as 1992. The state court dismissed the action without prejudice for failure to join necessary parties. The Johnsons did not appeal from the dismissal, electing instead to file the federal district court action giving rise to the present appeal.

The Johnsons's second amended complaint spans fifty-five pages and includes twenty-three counts. It alleges numerous constitutional violations stemming from regulatory and physical takings of the Johnson property from at least 1984 to the present,[7] and alleges a conspiracy to accomplish the takings and to prevent the Johnsons from receiving compensation. The complaint also alleges a violation by the United States of the Freedom of Information Act (FOIA) and includes a battery of pendent state law claims for, inter alia, breach of contract, promissory estoppel, fraud, misrepresentation, negligence, and inverse condemnation.

---

Order).

[7]For example, shortly after the Johnsons filed their initial complaint, Shorewood allegedly extended a public fence and walking trail onto the eastern boundary of the Johnsons's property and buried fiber optic cables parallel with the adjacent road. The Johnsons' second amended complaint identifies this action as an uncompensated taking.

## II.

### A. Claims Against The United States

The district court concluded that it lacked subject matter jurisdiction over the Johnsons's takings claims against the United States. Having reviewed the dismissal de novo, Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000), we agree. The United States Court of Federal Claims has exclusive subject matter jurisdiction over takings claims against the United States that exceed $10,000 in amount. See 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); Eastern Enterprises v. Apfel, 524 U.S. 498, 520 (1998); Mullally v. United States, 95 F.3d 12, 14 (8th Cir. 1996). The Johnsons clearly sought damages in excess of $10,000, and they have in fact filed takings claims against the United States in the Court of Federal Claims.

Nevertheless, the Johnsons suggest that dismissal of their takings claims violates their right to a jury trial under the Seventh Amendment. This argument fails, however, because parties are not entitled to a jury trial in most actions against the United States, see 28 U.S.C. § 2402, a limitation that derives from the sovereign power of the United States to limit when and how it may be sued. See United States v. Sherwood, 312 U.S. 584, 587 (1941); United States v. Kearns, 177 F.3d 706, 709 (8th Cir. 1999).

The district court also granted summary judgment on the Johnsons' FOIA claim on the ground that it was barred by the applicable statute of limitations. The Johnsons assert on appeal that the United States is estopped from asserting the statute of limitations defense because it "fraudulently" stated that it had destroyed certain documents when in fact it had not. This contention was not raised in the district court, however, and so we will not consider it on appeal. Orion Financial Corp. v. American Foods Group, Inc., 281 F.3d 733, 740 (8th Cir. 2002).

In any event, the claim would be moot because we could not grant the relief the Johnsons seek. Cf. Doe v. Pulaski County Special School Dist., 306 F.3d 616, 621 (8th Cir. 2002) (en banc) ("[A]n appeal must be dismissed as moot when our decision will have no 'effectual relief whatever to a prevailing party.'"(citation omitted)). The Johnsons do not argue that the United States should release any particular information or documents under FOIA, but instead suggest that the FOIA violation would have led to discovery of evidence that would have allowed them to recover just compensation in the state court proceedings. They claim that they can therefore assert "tort claims" against the United States. FOIA, however, is a comprehensive scheme that provides for injunctive relief only, not tort liability or damages, see 5 U.S.C. § 552(a)(4)(B) (delineating the powers of the district court on proof of a FOIA violation), and thus the Johnsons could not recover tort damages based on a FOIA violation. See Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 777 (D.C. Cir. 2002).

In a related vein, counsel for the Johnsons suggested at oral argument that the Johnsons still possess viable claims against the United States under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*, and for a "per se constitutional tort" because unidentified federal agents "misrepresented" that the Johnsons' property was a federal wetland in the state litigation and thereby diminished the jury's valuation judgment. Putting aside the question of the validity of these theories of recovery, they do not appear in the governing pleadings and were never properly raised before the district court, and so we will not consider them. The second amended complaint is devoid of references to the APA, does not request review of any final agency action, fails to mention Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and does not specify constitutional violations by federal officials that are distinct from the takings claims over which the district court lacked jurisdiction.[8]

---

[8]The Johnsons have repeatedly raised new issues throughout the course of this litigation. They never pleaded the alleged violations of environmental laws that appear in the statement of issues in the opening paragraphs of their brief, nor the

B. Claims Against The Remaining Defendants

In adopting the magistrate judge's recommendations, the district court found that the Johnsons had not produced evidence of a conspiracy sufficient to survive summary judgment on their claim under 42 U.S.C. § 1985. The court also granted summary judgment on the Johnsons' claims under 42 U.S.C. § 1983, adopting the magistrate judge's reasoning that those claims "were either fully litigated in the earlier state court proceedings or are not ripe because they have not been presented to the state court." Magistrate Judge's Recommendation of May 3, 2001, at 5. Having reviewed the grant of summary judgment de novo, applying the same standard as that applied by the district court, Evergreen Investments, LLC v. FCL Graphics, Inc., 334 F.3d 750, 753 (8th Cir. 2003), we conclude that the district court did not err in granting summary judgment.

A successful claim under 42 U.S.C. § 1985 requires evidence of a conspiracy to deprive a plaintiff of civil rights. See Jensen v. Henderson, 315 F.3d 854, 862 (8th Cir. 2002). On summary judgment, then, it was the Johnsons' burden to advance some "facts which would suggest that appellees reached an understanding to violate [the Johnsons'] rights." Id. (citing Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996)). From our review of the voluminous record,[9] including an affidavit by the former mayor of Shorewood, we agree that the Johnsons failed in this endeavor. The record and the Johnsons' appellate briefs are replete with speculation regarding a conspiracy, see e.g., Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037, 1038 (8th Cir. 2004) (per curiam), but nowhere do the Johnsons point to specific facts tending to show an illicit agreement among the defendants. It is not a court's obligation to search the record for specific facts that might support a litigant's claim,

---

allegations of First Amendment violations. The same is true of the alleged trespasses and property damage committed by the federal defendants during the summer of 2002, and the additional FOIA violations mentioned in the Johnsons' reply brief.

[9]We have considered the affidavits that were originally omitted from the summary judgment record.

see Crossley v. Georgia-Pacific Corp., No. 03-2320, 2004 WL 99022, at *1 (8th Cir. Jan. 22, 2004) (per curiam), and we are not disposed to undertake such a task in this case.

At most, the Johnsons' evidence suggests that the United States, the Watershed District, the municipal defendants, and the private developers worked together on various development projects and communicated with each other, but this alone is insufficient to generate a genuine issue of material fact regarding the existence of a conspiracy. This lack of evidence also dooms for want of state action the Johnsons' federal claims against the private developers under 42 U.S.C. § 1983. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999). As for the 42 U.S.C. §1983 claims against Shorewood, Minnetonka, and the Watershed District, we agree that "the record does not show the existence of any potential constitutional violation . . . other than the alleged taking of the Johnsons' property without just compensation." Magistrate Judge's Recommendation of May 3, 2001, at 5 n 2.

The United States Supreme Court has ruled that takings claims are not ripe for adjudication in federal court unless and until they have been exhausted in state administrative and judicial proceedings. See Williamson County Reg'l Planning Comm. v. Hamilton Bank, 473 U.S. 172, 195 (1985) (Williamson County) (concluding that a property owner "has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation."). Moreover, federal courts give full faith and credit to state court judgments, see 28 U.S.C. § 1738; Mitra v. Warren City Sch. Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984), and a state judgment on the merits is binding absent a grant of certiorari from the United States Supreme Court or the existence of a statute providing for federal review of the state decision. See, e.g., 28 U.S.C. § 2254.

Finally, because the United States Supreme Court alone has jurisdiction to review state court decisions, the lower federal courts lack subject matter jurisdiction

to consider federal claims that would vitiate an underlying state court judgment. Lemonds, 222 F.3d at 492; see also District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). With the limited exception of habeas corpus actions, this principle, known as the Rooker-Feldman doctrine, applies whenever a federal claim would succeed only "to the extent that the state court wrongly decided the issues before it." Simes v. Huckabee, 354 F.3d 823, 827 (8th Cir. 2004) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). Unlike collateral estoppel, the Rooker-Feldman doctrine does not necessarily depend upon an identity of parties or claims between the state and federal litigation, and because the doctrine is jurisdictional, it may be raised sua sponte. Lemonds, 222 F.3d at 492-93.

Many of the Johnsons' claims call upon us to consider issues identical to those on which the Johnsons have already obtained a state court decision, especially as against Shorewood. Although the district court mentioned our decision in Lemonds, it disposed of claims actually litigated in the state court cases under principles of collateral estoppel. We believe the problem is more fundamental. To the extent the Johnsons' alleged constitutional injury stems from claims adjudicated in the prior state court judgment, the district court lacked jurisdiction under Rooker-Feldman because the Johnsons are essentially challenging the state judgment as inadequate and are "asking the federal court for the same remedy requested in the state court action: just compensation." Gisslen v. City of Crystal, 345 F.3d 624, 628 (8th Cir. 2003), petition for cert. filed, No. 03-1141 (Feb. 4, 2004). Moreover, the claims may be unripe under Williamson County because the Johnsons failed to appeal the sufficiency of the state court jury award.

The Johnsons argue that they were denied just compensation due to "misrepresentations" perpetrated in the state court proceedings – misrepresentations which they allegedly discovered after the fact. Whatever the validity of these allegations, Rooker-Feldman stands as a bar to federal review because the Johnsons' requested relief "would effectively reverse the state court decision or void its ruling."

Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997). The Johnsons' remedy, if any, is to return to state court and utilize its procedures for remedying fraud. See Johnson v. Smithsonian Institution, 189 F.3d 180, 186-87 (2d Cir. 1999). If the state courts deny relief, the Johnsons may seek review by the United States Supreme Court.

The Johnsons' claims that were not adjudicated in state proceedings suffer a similar fate, although for a different reason. Although claims not presented or adjudicated in state proceedings may not be not barred by Rooker-Feldman, Williamson County still applies. Thus, all of the claims which the Johnsons failed to present in the state litigation, as well as all of the claims which arose after the state court fixed the takings issues to be decided, are unripe for adjudication in federal court because the Johnsons have failed to pursue state postdeprivation remedies for those alleged takings. See Kottschade v. City of Rochester, 319 F.3d 1038, 1042-43 (8th Cir.), cert. denied, 124 S. Ct. 178 (2003).

C. Dismissal of State Law Claims

Because the court granted dismissal or summary judgment on all of the Johnsons' federal claims, it declined to exercise jurisdiction over the Johnsons' supplemental state law claims, dismissing them without prejudice. A federal district court has the discretionary power to decline jurisdiction where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988). That is precisely the case here, and we find no abuse of discretion in the district court's decision to dismiss the pendent claims. See Innovative Home Health Care,

Inc. v. P.T.-O.T. Assoc., 141 F.3d 1284, 1287 (8th Cir. 1998); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994).[10]

D. Shorewood's Cross-Appeal

Shorewood's cross-appeal contends that many of the Johnsons' current claims could have been brought during the state court proceedings described above. Shorewood suggests that not only does collateral estoppel bar consideration of claims actually litigated, res judicata bars claims that could have been litigated during the state court proceedings. Perhaps so, but in light of our holding that Rooker-Feldman deprived the district court of subject matter jurisdiction, we need not address this argument. Because Rooker-Feldman and Williamson County preclude federal review of the Johnsons' various takings claims, the determination regarding the precise reach of the state court judgment is a matter for the state courts to decide.

**Conclusion**

As modified to reflect our holding that the district court was without jurisdiction to consider certain of the Johnsons' claims, the judgment is affirmed.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

---

[10]We have considered and find to be without merit the Johnsons' contentions regarding the rulings on discovery procedures and the denial of their motion to file a third amended complaint.